Judge Robertson,
delivered the opinion of the Court.
This was a bill in chancery, filed by Hunt vs, Boyier, for a new trial of an action of trover, in which the latter had recovered a judgment for $>45', and costs against the former.
Two questions are presented by the record: 1st. Had the court the power to render the decree which it did? 2nd. Did the facts justify any decree for the complainant below?
The court, by an interlocutory order, directed to be served on Boyier, required him to submit to a new trial. On his refusal to consent to a new trial, the court *485 íhade a final decree, adjudging to Hunt against Boyief the amount of the judgment at law: that judgment having been satisfied by execution.
A chancellor may direct a "ae^ ^ere the common law judge would; provided sufficient reason be given for not having applied to the common law judge.
*485 We cannot concede to the court the authority to render such a decree. The chancellor cannot set aside a common law judgment by decreeing a new trial peremptorily. When he determines that a new trial is proper, he can enforce his decree only by operating on the person of the defendant by attachment, sequestration, fine or imprisonment; or by injunction, if the judgment shall not have been satisfied. Litt. sec. ca. 451. Nor can he, if the judgment at law shall have been paid off| decree that the amount be refunded. As long as the judgment shall stand unreversed and unaffected by a new trial, it secures to the creditof the money which he may have collected under it. The chancellor cannot reverse or nullify that judgment; nor compel the creditor to surrender what he' may have acquired by it, unless it had been obtained fraudulently.
The chancellor, in this case, has exercised the powers Which belong alone to a jury and a judge of law. He has not only adjudicated on the evidence and decided that the verdict and judgment obtained by Boyier are erroneous, but has decided that he shall refund the amount which they enabled him to collect. The controversy is perfectly legal, and can be re-tried only in a law forum. Hunt can have no right to restitution while the judgment shall remain in full force; and whenever by a new trial he shall have such right, his remedy for it will be legal. Chancery eannot entertain jurisdiction of a claim to a reimbursement of the amount paid on the judgment, on the ground that the complainant was not ready for trial.
The decree of the chancellor is, therefore, erroneous and must be' reversed on this ground.
But there is error in the second point, more extensive in its effect, and more fatal to the claim of Hunt to relief, than that which has been noticed. The allegations and proof did not authorize a decree for a new trial.
The allegation of absence on private business, insufficient. Discovery of new testimony or additional witnesses to points in issue no ground for new trial.
Boyier had loaned to Hunt, a horse to ride to Lexington. The horse died on the way, and Boyier insisting that the death was the effect of the negligence and excessive hard riding of Hunt, sued him for the horse in trover, and recovered forty-five dollars.
Execution on the judgment was replevied for two years, and the replevin bond satisfied after it became due. Hunt afterwards filed his bill for a new trial, relying on the allegation, that he was in the South with stock at the time of the trial, and had discovered since his return home, that he could preive that when he borrowed the horse, he was unsound. Several depositions were taken, which leave room for reasonable doubt, whether the horse was unsound or not. But there is no proof that he died of any such unsoundness^ or that it was at all probable that he would not have died if he were perfectly sound at the loan.
it was proved that an agent and a lawyer defended the suit at law for Hunt. That under the general issue an attempt was made to prove the unsoundness of the horse. It also appears, that Laüghlin who rode with Hunt to Lexington, was a witness on the trial before the jury.
On these facts several objections to the decree obviously appear.
1. The allegations of the bill are insufficient. The excuse for not making full proof on the trial, is very defectively and indefinitely set out, and would not be good, if it had been stated with ever so much precision. It is not alledgedj when the discovery was made of the new testimony^ except that it was after the' judgment. Was it after or before the payment of the money? If before, why was not the bill filed sooner? If after, why was it not discovered sooner? If the discovery were not made until after the payment of the' replevin bond, the inference would be, that Hunt had not been vigilant; unless he had satisfactorily explained, how he made the discovery, and why he did not make it sooner. Either branch of the dilemma, is fatal to Hunt’s equity. If he made the discovery shortly after his return from the Soulh, he ought to have filed his bill sooner than he did. If he did not make the discovery until after the satisfaction of the judg *487 ment, he has evinced a passiveness which must be fatal to his claim to equitable assistance. “ Vigilantibus non dornvientibus, servat lex,” applies more to motions or bills for new trials, than to any other class of cases. It does not appear that there were no other witnesses except those said to be discovered after the trial, nor that any pains had been taken to find witnes, ses; nor that Hunt did not know of the unsoundness before the trial. These allegations would all be necessary.
But there are still other and stronger objections.
2. The alledged discovery is not of a new matter of defence, but of additional evidence in support of a fact pul in issue and tried by the jury. For such a cause, a new trial ought not to have been granted by the Judge who tried the case. There would be no end to trials, nor any certainty in their results, if new trials should be granted on the allegation of a discovery of new witnesses, to prove a fact, in the knowledge of the party and in issue, on the former trial. Such a practice would subserve purposes of fraud, and en? courage by indemnity, every species of carelessness and inattention in the preparation of suits. Hence it is not tolerated. On this point, the bill is radically defect tive.
3. The excuse for not being prepared fully on the trial is unsatisfactory. Absence on private business, has never been held sufficient, of itself, to authorize a new trial, If a litigant shall deem it more profitable to embark in an adventure of speculation, or to devote his attention to other private concerns, than to attend to the preparation and trial of his suit, he must submit to the consequences of his voluntary election. Those who engage in the exportation of the stock and ofthe surplus products of pur State, deserve all the fayor which any other class of citizens receive or have a right to expect. But neither the principles of law, nor of justice, nor of public policy, coujd permit it to be established as a genera] rule, that absence from court, on private business to the South or elsewhere, should entitle the absentee to a new trial in any case which, may have been tried in his absence,
Caperton, for plaintiff; E. Smith, for defendant,
Besides, in this case, Hunt left agents at home to attend to his suit; if he did not, he ought to have done it; and it was his duty to give them instructions and information of all the facts in his own knowledge, which might have become material to his defence. Nothing of this kind appears in the bill. Even if the excuse for absence were sufficient, it should appear that his presence would have made a, material difference in the result; 1 Marsh, 351,
The chancellor may direct a new trial at law, (whenever a case is presented in which the common law Judge would grant it,) provided, satisfactory reasons are shown for failing to make the application at lawi
But in this case, if the application had been made to the Judge in proper time, he could not, consistently with established principles, have granted a new trial; a fortiori, the chancellor should forbear; and the excuse for not being ready on the trial, and for not then moving for anew trial is entirely insufficient; and if i^ were not, the other objections are insuperable.
Wherefore, the decree is reversed, and the. cause remanded with instructions to dismiss the bill.